Good afternoon, Your Honors. My name is Butcher Howland. I represent the defendant Apollon Jaz Ali. Can I please have court counsel? Thank you. We had two very short ladies in here before. Thank you. Your Honor, the issue in this case, this appeal is from the defendant's criminal contempt conviction based on his refusal to testify in the jury trial of People v. Jim McPherson. And the issue in this case is whether the defendant or the judge committed plain error when you permitted the prosecutor to argue that the defendant's invocation of his Fifth Amendment right against privilege against self-incrimination contradicted and undermined the credibility of his later pleading of a necessity defense in this criminal contempt trial. Now the comment that the prosecutor ultimately made is quoted in full in my reply brief. But the gist of it is that the prosecutor referred to the invocation of the defendant's Fifth Amendment right as an excuse, and she argued that when that excuse did not work, that the defendant then came up with another excuse, a new excuse, that being the necessity defense. Well, counsel, though, the prosecutor wasn't the first person to refer to this as an excuse. Isn't that correct? The record reflects nine pages before that statement, the following argument that defense counsel made, and I think I've copied this correctly, so it's pretty close, the threats, the fears that Mr. Ali had are his defense to contempt. It doesn't prevent what happened in November of 2014 from happening. It's an excuse after the fact, and it's one that the state has to disprove beyond a reasonable doubt. So this comment was a comment by the prosecution, was certainly in the rebuttal argument in response to that argument and the use of the word excuse, and was a comment with respect to the evidence and the defendant's underlying motivation here. Isn't that what the issue was? Well, the issue was the defendant's The defense counsel was using excuse, I think, in a different manner than the prosecutor was using the word excuse in the rebuttal argument. I think the prosecutors, based on just the prosecutor's comment in the rebuttal argument, the word excuse being used to belittle and demean the defendant's, both his implication of his Fifth Amendment right and his necessity pleading, basically saying these weren't serious defenses. Well, he got his necessity defense, even though the trial court said this is a close call, but he let the defendant plead necessity, correct? The judge did, correct. And the state's focus was on the emails, or I should say the texts, the communications, where the defendant never mentions fear of retaliation. It's all about love for the gang. I'm paraphrasing, but essentially that's what the bulk of the argument was. And there was evidence in the record to support that. So what was the relevance? How was the content of what the defendant may or may not have said on the stand at the McPherson trial material to the allegation that the state was making that he was not taking the fifth of good faith, he was protecting the gang. It was out of love for the gang. How was the content of what or the inference of what he would have said at that McPherson trial even relevant? It's relevant because it's, what he's saying or she's saying is that the, that the implication of Fifth Amendment right contradicted the necessity defense. And that would, and that the defendant did not come up with the necessity defense until after the Fifth Amendment implication failed. And that contradicted, that was, that was a misstatement of the evidence because the evidence was uncontradicted that the defendant well before the McPherson trial began told his attorney that he was afraid of the Facebook threats. And that was in front of the jury. Mr. Reinhart testified. I mean, the jury had all that evidence. Correct. So the point is, how did the fact or any argument about the defendant taking the Fifth Amendment affect the outcome of the trial? The jury had the defendant's version. They had Mr. Reinhart's testimony and they had all these, these texts and they had his mother's testimony as well. How, how did that possibly affect the outcome of the trial? How is it plain error? Well, in the same way that any prosecutor's argument could be plain error, it, it, it went directly to the one contested point in this case, which is what was the defendant's motivation for not testifying and whether or not the defendant was being truthful when he, when he testified that his motivation was necessity. So like any other, like in any case, you know, when a prosecutor argues, well, that contradicted, you know, his implication of his right when it didn't really do that, that was improper and it could have pushed the jury, you know, that much one way or the other against, or in the direction against the defendant in this case. And because the, the evidence in this case was closely balanced. The jury knew that the defendant took the Fifth, just the fact that he was given immunity. The jury knew that, correct? That's correct. I mean, the state had to prove that his, that he intentionally decided not to testify. The point is, what's the inference, the bad inference that pulls from the state's argument? The bad inference is that the defendant is a liar. Right. Because, because he invoked his Fifth Amendment right to self, against self-determination, like his invocation of that right made him a liar. All right. But then are there any cases holding that it's impermissible to comment on a defendant's invocation of the Fifth Amendment in a different case? I, you know, I'm not aware of any on point. Right. I don't think there is. There is, what I did cite was the red case where the prosecutor had argued that, or I'm sorry, where the court had found that the defendant's invocation was Fifth Amendment right did not contradict his later or McPress earlier exculpatory statement. That's really distinguishable, isn't it? I mean, Griffin versus United States is really the authority that talks about the Fifth Amendment and allows the state to comment on a defendant's silence and said that, you know, that's wrong if you do that, because that's in essence, establishing evidence against the defendant. So, I mean, that's the thrust of it. None of that was done here. This was all about commenting on the evidence as to what the underlying motivation was after the defendant invoked the Fifth and then refused once he was given use immunity to testify. So in essence, one could say that the comment really wasn't directed to his invoking the Fifth Amendment in the first place, but why he refused after that. And then how that impacted the necessity defense and whether in the first trial he really had fear or credible fear or whether his motivation in refusing was something else, which is what Justice Burkett referred to. I agree with you on what the issue was, but the impact of the comment is still that she's taking this implication of the right and using it and drawing inference from it that that is unfair, that because he invoked his right, his later claim lacks credibility, because the credibility of the later claim is what counts. Well, once he takes the Fifth and then is given immunity, there's no excuse other than, you know, here the excuse is necessity. And he had his full defense that was in front of the jury. Another point. You argued Red 1. Red 2, you also argued Red 2. In Red 2, the prosecutor mischaracterized the defendant's statements as a confession. And the Supreme Court said that was error, but it was not prejudicial error because in that case, there was other evidence that allowed a reasonable inference that the defendant possessed guilty knowledge. Here, the comment aside, there's more than substantial evidence of the inference that the State was asking the jury to draw that the defendant declined to testify, not out of fear, but out of love of the gang. So there was plenty of evidence. Why doesn't Red 2 control? Even if it was error, there's no prejudice because the defendant shows plenty of evidence to support the jury's determination that the defendant's decision not to testify was not out of fear of retaliation, but out of love or loyalty to the gang. Well, I guess I would respectfully disagree with your assessment of the strength of the evidence. It was unquestionable that there were threats. They were real. That he discounted in his responses. I don't think he discounted them so much as he assured the people making the threats, he assured them that he wasn't going to testify. Whether that's out of fear or out of loyalty to the gang, it was kind of neutral, I guess. You also cited the United States or Namit versus the United States. In that case, there was no prejudicial error found as well, correct? I believe that's correct. I mean, the witnesses took the fifth in front of the jury intermittently. They would take the fifth when it touched upon criminal exposure, but then give the rest of their testimony. And the United States Supreme Court said there was no prejudicial error here because the jury had all the evidence. And the fact that the witnesses took the fifth on certain subjects did not improperly influence the jury. Right. But again, I mean, it's a question of, I don't believe that that's a question of the prosecutor mischaracterizing what the witnesses did. And in this case, it is. And that is where I think the difference lies. But the threats were real. The defendant's responses did not say, I'm not afraid of you. He said, I'm going to do what you want. When did those troubling Facebook posts start with reference to this testimony? Well, it was quite a ways before the testimony. He was still in Missouri, right? Actually, it was before. The threats were actually before he was in Missouri. So before he even got in trouble down there before he was in Chicago. All right. So they had all of this opportunity to get him if they didn't trust him. His mother never moved from the location, even though I think she was offered maybe an opportunity to. Or he said, I'll get you safe or something. When he talked to her, she said, no, I'm not leaving. Yeah, I'm scared, but I'm not leaving. I'm not going to get into this. If something was going to happen to him and they really didn't want him to testify, they had options at him prior to any secured custody, didn't they? Well, I don't think he was ever actually out of custody and in this area in between the threats. And he was in a halfway house in Chicago at the time of the threats. He went from there to another address in Chicago and then left to Missouri. But the threats were, they were kind of promised on him testifying. So as long as he didn't testify, he wasn't, and that's what he was. Well, they couldn't guarantee that he didn't testify. I mean, there were threats. If we're going to call them threats, I'm calling them troubling posts at this time. They were suggestive, but they had plenty of opportunity to make sure he didn't testify. And they did not choose to do so. So why now, 10 months later or however long it is, does it become an issue and I'm not going to testify? And why, and I'll say, why does it become a defense of necessity? Well, he did get his instructions. So the judge gave him the instructions. So there is that. As far as the strength of the defense, I guess, you know, it just comes down to that. That was part of the opposite of what went to the jury. And again, they are real threats and they are related to his potential testifying. You know, he doesn't damage McPherson's case until he testifies. And that's when these threats would have become operative. So I think the jury could have concluded that the defendant did act out of necessity in this case, but were dissuaded from that by the prosecutor's comment, telling them that the fact that he invoked his Fifth Amendment right, which was also undisputed, showed that he was a liar. And based on that, I would ask that Your Honor find that the judge committed plain error when he allowed the prosecutor to make these comments and reverse the clause and demand for a new trial. Let me ask a question. Was Darius McPherson's conviction for contempt also related to this underlying order case? Yes. So he was also found guilty of contempt? I believe he pled guilty to contempt. He pled guilty to the contempt? Yes. And I have no idea if anybody threatened him. Unless Your Honor has any further questions. Well, I do have one. I was trying to get it straight before we came in. How is another judge, is it Shippers? How was he involved in this? I don't know. Was he the one who was? Well, I thought maybe he had, there was another trial that he was involved in, but I thought it was another judge that was involved. But when you hear five or six in a day, sometimes you can't remember your name, let alone the trial judge. So I apologize if there's been that confusion for you. I don't know the answer to that. Okay. Thank you, Your Honor. Thank you. Good morning, Your Honors, Counsel. Good afternoon, Your Honors, Counsel. May it please the court. My name is Stephen Rogers and I represent the people of the state of Illinois. Your Honors, the state in this case contends that no error occurred and that even if there was error, it did not amount to plain error. I'll start out with one of the last things defense counsel said, is that the threats were premised on testimony. There's no mention of testimony within the threats. And in fact, twice on records pages, reported proceedings 821 and 823, they referenced defendant's written statement to police. And that's what he's being threatened for. He cooperated with police and gave a statement, which presumably inculpated Jim McPherson. And the only reason testimony comes up is because defendant volunteers that Jim McPherson is going to beat the case because he won't testify. The other is, just as you pointed out, one of the defense counsel's remarks in closing, and there were actually a couple more when I went back through, on record page 987, defense counsel argued, Mr. Reinhart knew his client was scared. He knew his client didn't want to testify. So he utilized what legal mechanisms he had very well to try and help his client. And then later he says, so he used the fifth. I think we all agreed there was some underlying motivation to why defendant refused to testify. Defense counsel is admitting he's not testifying because he's scared. So they went with the fifth amendment. And then on record page 981, the very top defense counsel states, there's no harm to the judicial process when the law provides an excuse for your conduct. He's using excuse. It could be argued that the state was using it in a demeaning manner, but the terms excuse, privilege, justification, those are all facts that transform otherwise unlawful conduct into lawful conduct. Well, it struck me if defense counsel's using the same word that then the state picks up on, why it would have made more sense for him to say, you know, he's scared. This is a defense to his inability. But he used, or his unwillingness to testify. He used the word excuse. And Mr. Hamill has said, well, they're using them in a different way. We don't know their tone of voice. We, I don't think any of us were there. I know I wasn't. I'm assuming that you folks weren't. So they're just words on paper. Excuse can be considered in different ways. But I don't, do you see anything in that flow of argument that would indicate that they were used differently? No, Your Honor. I didn't. And I actually went through in the specific paragraph that defense counsel is referring to. I just, it's now the respondent used the court system to try to get out of testifying. He asserts his Fifth Amendment right. But that doesn't work. And then this is the complaint of sentence. That's the excuse he used to not testify back in November. So I took out excuse, put in constitutional privilege. That's the constitutional privilege he used to not testify in November. And today his new excuse is the necessity defense. And if you take out that excuse, and today his justification is the necessity defense. I mean, there's no way, anytime a defendant complains about an error in closing argument, even if they're there, they have to prove that they were substantially prejudiced. And in this case, even if the state would have used the exact perfect terminology, there's no way defendant was substantially prejudiced in this case. And then when you talk about the closeness of evidence, defendants own words disprove the credibility of these threats. He responds to the Facebook threats that he'd be back. He's on house arrest. He's not ducking anybody. And he's not going to testify anyways. And actually, when defendant testified in this case, they get done with the Facebook threats. And they say, was there anybody else? And he says, yeah, actually, the people I was really worried about are the people that weren't on Facebook. So he's now playing the Facebook threats themselves in his own testimony at the contempt trial. And then finally, he had a recorded conversation with his mother. And I understand defendant testified he didn't want to scare his mother. But this is a couple of days before Jim McPherson's murder trial. And he says, I saw him the other day. I have so much love for him. We've been through a lot together. And there was certainly much evidence to support that being the reason defendant refused to testify.  So that would guide at least the intensity or depth of his fear. Exactly. Were there any motions eliminated with regard to restricting comment on the defendant's exercise of his Fifth Amendment right? Your Honor, there was a motion eliminated that wanted to preclude the state from saying the defendant would basically say whatever was convenient based on the form. And so there was that motion. Now, I don't know if there was a specific motion that would have referenced using the word excuse or if that just came up. But of course, the defense counsel did not object at this time and did not include the issue in the post-trial motion. Well, the trial judge ruled that it was okay for the state to argue the defendant's invocation of his Fifth at the trial undermined the credibility of his subsequent claim of necessity. Wasn't that the court's ruling? The trial court's ruling? I'm not sure of the exact ruling, Your Honor. But I did know he said essentially the lie is what is at issue. Okay. And whether the motive is fear or is loyalty for the gang, any comment that's directed to either of those is fair game. And just to touch on the St. Louis case, that was after he's granted use immunity. So at that point, they're saying, is he really going to refuse and go the contempt route? Or is he going to testify? And that's exactly the point is, has the defendant really came to Mr. Reinhart and said, under no circumstances will I take the stand? Because I'm scared not only for myself, but for my mother. There's no reasonable attorney that's then going to go put the Lake County prosecutors, who are in the middle of a murder trial, on a mission to secure a deal in St. Louis, Missouri. And then the context, defendant was at a halfway house when these threats are made. He then moves to another location in Chicago. If these threats were real, he's an hour from North Chicago at this point. And nothing ever occurred. This is a year and a half later. No one's threatening his mother. When is his written statement made in this particular sequence of events? February 19th, 2013. I believe the murder occurred February 15th, 2013. Okay. And I believe, and then so the threats start May of 2013. They go to July 2013. And then we're November 2014 at this time. So I think the implication is, word gets out that he's, this written statement is out there. The threats start coming in and then it pretty much goes away after that. You don't hear any other threats after July 2013. Because he's been responding, hey, I'm not going to do anything. That's okay. Or some, you know, just generally he's responding to the text, or to the posts. Yes, Your Honor. He's not going to testify any. I mean, he still says, I'm still going forward and GD crazy. I'm still part of the gang. I'm not testifying, so. If the court has no other questions. No, I don't. The state respectfully requests that this court affirm the defendant's conviction. Thank you, Your Honor. Okay, so there is a specific motion in Lemonade that involved this exact argument. It appears on C-46 of the record. And the motion asked the court to preclude the state from arguing that the defendant had shifting motivations for not testifying based on his invocation as Fifth Amendment right. And the defense counsel, that motion was denied pre-trial. The defense counsel renewed it just before closing arguments. And again, argued, asked the judge to preclude the state's attorney from making the argument that the defendant's invocation as Fifth Amendment right contradicted his necessity defense. And I think it's telling that the prosecutor's response to that was, that's exactly what I intend to argue. And it's a reasonable inference from the evidence. So that is what the comment was meant to convey. And that contradiction, again, is really what the problem is with the comment. So even if defense counsel used the word excuse in his argument, and I believe he used it mostly as a verb, excuse, does this excuse the defendant from doing, from testifying, that's still a different character from the prosecutor's argument that this excuse contradicts this prior excuse. Also, on the topic of the Facebook threats, the threats, many of the threats did in fact talk about, in fact, the defendant's statement to the police. But the defendant placated those threats by promising not to testify. And if he testified, that's going to obviously undo his placating the original threats. And that's what the threat that the defendant faced was, was undoing that. And the defendant's testimony that he was really afraid of the people who were not threatening him on Facebook, that doesn't reduce the, minimize the threat of the threats that he heard. All that's saying is there's more people out there than the ones who are yelling at me on Facebook. And the people who are smart enough not to yell at me on Facebook are even more dangerous than the people who are stupid enough to do that. And that's not, that's not really taking away from the threats that were proved on Facebook. It's just saying there's more out there. And, and finally. But we've got, I mean, and this is one of the issues I'm trying to wrap my head around. These, these posts and conversations on Facebook are going back and forth for some period of time. Yet we have no evidence. He, he just tells Reinhardt he's scared. We don't have any evidence that in custody he's been approached. And we know that that's a, that's a great place for meeting of former soulmates. And we don't have any threat to his mother. We don't have anything he can bring back and say, look, this, they tried already. I mean, so what are we talking about here? There actually was some evidence of threats in custody. The defendant testified that one, another inmate at one point walked past him and said, Jim says be quiet. And then there's a sign by, by Jim Pearson during the trial, according to the defendant. So there is some, some evidence of that. But nobody tried to hurt him, I guess. Nobody. There's, true, there's no, but again, he's not testified. And, and he's telling them I'm not going to testify. And he's going into court and saying, I'm not testifying. So he, he's doing what they want. And so they're not going to attack him for that. And finally, I just, just want to correct one, one thing that, that it was the assistant attorney FIS that testified to the effort to make a deal with the prosecutors in Missouri, not, not Reinhart. Reinhart wasn't asked about that. I do think that, I mean, that's obviously part of the evidence that goes on the pile and, and it's up to the jury to sort it out, to decide the defendant's motives. And that's the question in this case then is, comes down to, did the prosecutor's comment push the jury over the edge? My, my position is that it did. And I would ask your honors to, to reverse the defendant's conviction and remand the cause for a new trial. Thank you. Thank you. Thank both parties for their arguments today. A written decision will be issued in due course. This being the last case on the call, the court's adjourned. Thanks for coming a little earlier.